UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SATA GMBH & CO. KG, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:19-cv-01941-GMN-BNW |
| vs. ) | |
| ) | **ORDER** |
| HANGZHOU KAPA TOOLS CO. LTD., ) | |
| ) | |
| Defendant. ) | |

Pending before the Court is the Motion for Default Judgment, (ECF No. 9), filed by Plaintiff SATA GmbH & Co. KG ("Plaintiff").  Defendant Hangzhou Kapa Tools Co. Ltd., a/k/a PHX Refinish Co., LTD, a/k/a Phoenix Automotive Refinishing ("Defendant") did not file a Response.

For the reasons discussed below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

This case arises from Defendant's alleged infringement of Plaintiff's design patent and trademarks associated with a paint spray gun, which Defendant offered for sale at the 2019 Specialty Equipment Market Association ("SEMA") trade show in Las Vegas, Nevada and on its website. (*See* Catalog Photos, Ex. B to Compl., ECF No. 2-1); (Website Screenshots, Ex. C to Compl., ECF No. 2-2).  Plaintiff is a German manufacturer of paint spray guns and reservoirs. (Mot. Default J. 2:17–9, ECF No. 9).  Plaintiff sells its products to distributors worldwide, including over 100,000 units annually in the United States. (*Id.* 2:20–21).  Plaintiff advertises and promotes its products and services in the United States under federally registered trademarks (the "SATA Marks"). (*Id.* 2:23–24).

On November 5, 2019, Plaintiff and Defendant attended the SEMA trade show as vendors. (Compl. ¶¶ 35–36, ECF No. 1).  Plaintiff learned, after reviewing Defendant's catalog,

that Defendant would be selling paint spray guns manufactured by Phoenix Automotive Refinishing ("Phoenix"). (*See* Catalog Photos, Ex. B to Compl). Phoenix is a manufacturer of paint spray guns. (Compl. ¶ 17). Defendant also operates a website offering Phoenix products. (*See* Website Screenshots, Ex. C to Compl.).

In a related case, Plaintiff obtained an Order for Default Judgment, Permanent Injunction, and Attorney Fees against Phoenix. *SATA GmbH & Co. KG v. Phoenix Automotive Refinishing*, No. 2:17-cv-02753-JAD-NJK, 2019 U.S. Dist. LEXIS 22343, 2019 WL 570728, at *6–7 (D. Nev Feb. 8, 2019). In that case, the Court found that Phoenix offered infringing products for sale in the United States both online and at the 2017 SEMA trade show in Las Vegas. *Id.* at *2–*3, *6–*7. The Order specifically enjoined "any persons acting in concert or participation with [Phoenix]" from "[u]sing any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce . . . without limitation." *Id.* at *7. It further ordered that "Phoenix shall immediately and permanently take down any website . . . that contains any depiction, description, or advertisement of product that infringes the intellectual property owned by [Plaintiff]." *Id.*

Plaintiff now alleges that Defendant is the alter ego of Phoenix, and Defendant was created for the purpose of circumventing the earlier Permanent Injunction and Judgment. (Compl. 2:5–10). While attending the 2019 SEMA trade show, Defendant offered a Phoenix paint spray gun bearing Plaintiff's marks in violation of the Permanent Injunction. (*See* Catalog Photos, Ex. B to Compl.). Defendant also operates a website that is nearly identical to the Phoenix website the Court ordered to be taken down in the earlier Order. (*See* Website Screenshots, Ex. C to Compl.). Plaintiff seeks judgement that Defendant is the alter ego of Phoenix, and that Defendant is subject to the previous Order. (Compl. 2:5–10).

Defendant's Marketing Manager was served with a copy of the Complaint by personal service while at SEMA on November 5, 2019. (Summons Returned Executed, ECF No. 6).

Defendant has not responded or otherwise appeared in this case. Plaintiff filed a Motion for Entry of Clerk's Default, (Mot. Entry of Clerk's Default, ECF No. 7), and the Clerk subsequently entered default against Defendant. (Clerk's Entry of Default, ECF No. 8). Plaintiff now moves for default judgment. (Mot. Default J., ECF No. 9).

## II. **LEGAL STANDARD**

Obtaining default judgment is a two-step process dictated by Rule 55 of the Federal rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). After the clerk of court enters default, a party must then seek entry of default judgment as a separate motion. Fed. R. Civ. P. 55(b). Because a responsive pleading is required and none was given, factual assertions in the Complaint not relating to the amount of damages are taken as admitted. Fed. R. Civ. P. 8(b)(6). *See also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). However, legally insufficient claims or incomplete factual claims are not established by way of non-response. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Whether to order default judgment is at the court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit identifies seven factors to consider when determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. The court may conduct hearings or require the Plaintiff provide additional proof to ensure the requested relief is appropriate. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

Plaintiff moves for default judgment against Defendant and requests that the Court find Defendant is an alter ego of Phoenix, thereby subjecting Defendant to the earlier Judgment and Permanent Injunction against Phoenix. (Mot. Default J. 14:14–19, ECF No. 9). Plaintiff initiated the two-step process required by Rule 55 by moving for clerk's entry of default. (Mot. Entry Clerk's Default, ECF No. 7). The Clerk entered default, completing the requirements of Rule 55(a). (Clerk's Entry of Default, ECF No. 8). Plaintiff now moves for entry of default judgment under Rule 55(b). (Mot. Default J., ECF No. 9).

Upon reviewing the documents on file, the Court finds that the *Eitel* factors support entry of default judgment in favor of Plaintiff and against Defendant.

### A. Prejudice

The first *Eitel* factor weighs in favor of default judgement. A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits," and therefore satisfies this first factor. *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056-GMN-PAL, 2019 U.S. Dist LEXIS 33632, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *ME2 Prods., Inc. v. Sanchez*, No. 2:17-cv-667-JCM-NJK, U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *1 (D. Nev. Apr. 12, 2018); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

### B. The Merits and Sufficiency of the Complaint

Regarding the second and third *Eitel* factors, the Court finds Plaintiff's claim for alter ego liability and declaratory relief sufficiently pleaded and likely meritorious. Under Nevada law, a plaintiff must demonstrate the following three elements to establish an alter ego claim:

> (a) The corporation is influenced and governed by the person; (b) There is such unity of interest and ownership that the corporation and the person are inseparable

> from each other; and (c) Adherence to the notion of the corporation being an entity separate from the person would sanction fraud or promote a manifest injustice.

NRS 78.747.  Under the Nevada alter ego test also extends to non-corporate entities. *See Gardner v. Eighth J. Dist. Ct.*, 405 P.3d 651, 656 (Nev. 2017); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008).  Comingling of funds and failure to observe corporate formalities are among the indicators to be considered when evaluating alter ego liability. *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 497 (Nev. 1998).

Failure to appear does not render a plaintiff's assertion of alter ego liability true absent sufficient factual allegations. *See Bermuda Rd. Properties, LLC v. EcoLogical Steel Sys., Inc.*, No. 2:12-cv-01579-JAD-GWF, 2017 U.S. Dist. LEXIS 29768, 2017 WL 797092, at *3–4 (D. Nev. Mar. 1, 2017).  Plaintiff's factual allegations regarding alter ego will be accepted as true, but the allegations must establish the elements of alter ego liability. *See Geddes*, 559 F.2d at 560.

Plaintiff has sufficiently shown Defendant is influenced and controlled by Phoenix. First, the entities share nearly identical websites and branding.  Second, the Ministry of Industry and Information Technology of the Chinese government lists www.phxrefinish.com as the official website of Defendant. (Compl. ¶ 27).  The website is nearly identical to the www.PhoenixRefinish.com website that was ordered to be taken down by the earlier Order. (*Id.* ¶ 25).  Third, the product catalogs available at the Defendant's SEMA booth offered Phoenix products for sale and identified the products by their name, picture, and product number. (*Id.* ¶¶ 37–39).  Defendant's marketing manager at the SEMA trade provided his information on a Phoenix business card. (*Id.* ¶ 44).  Defendant therefore appears to be a vehicle for continued sales of the Phoenix equipment, which operates under Phoenix's influence and control.

Plaintiff has sufficiently shown the unity of interest and ownership between Defendant and Phoenix make them inseparable.  The sharing of certifications, physical locations, and

online presence indicates they are the same entity. Phoenix's International Organization for Standardization certification is registered to Defendant. (*Id.* ¶ 28). Defendant and Phoenix share the same physical address and telephone number. (*Id.* ¶ 29). The graphics and marketing materials Defendant used while at SEMA are identical to those found on the Phoenix website. (*Id.* ¶¶ 37–52). Defendant and Phoenix therefore appear to be separate entities on paper only.

Plaintiff has sufficiently shown that maintaining separation between Defendant and Phoenix would promote injustice. Defendant sells goods both in person and online that appear to infringe on Plaintiff's intellectual property rights. The catalogs available at the Defendant's booth displayed a paint spray gun in violation of the existing Permanent Injunction against Phoenix. (*Id.* ¶ 43). The counterfeit goods substantially threaten Plaintiff's market share. (*Id.* ¶ 48). Allowing Defendant to avoid liability would permit its alter ego, Phoenix, to avoid enforcement of the earlier Judgment and Permanent Injunction. (*Id.* 12:22–26). Given the preceding Order, maintaining separation between Defendant and Phoenix would promote injustice.

The Complaint sufficiently pleads alter ego liability. Given that the totality of the evidence presented indicates a lack of corporate formalities separating Defendant and Phoenix, the Plaintiff's substantive alter ego claim has merit. The second and third *Eitel* factors therefore weigh in favor of default judgment.

### C. Amount at Stake

The fourth *Eitel* factor weighs in favor of default judgement because Plaintiff is not seeking damages. Because Defendant only seeks declaratory relief and not damages at this stage, this factor weighs in favor of default judgment.

### D. Possibility of Dispute

The fifth *Eitel* factor, which concerns the possibility of a dispute regarding material facts, favors Plaintiff. Courts have recognized that, "[o]nce the clerk enters a default, the well-

pleaded factual allegations of the [moving party's] complaint are taken as true, except for those allegations relating to damages." *ME2 Prods.*, 2018 WL 1763514, at *2 (quoting *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 WL 3636171, at *4 (D. Nev. Sept. 9, 2010)). Taking the Plaintiff's allegations as true, Defendant is the alter ego of Phoenix and is subject to the previous Order. (Compl. ¶¶ 50–54).

### E. Excusable Neglect

When a properly served defendant fails to answer or otherwise appear, the sixth *Eitel* factor favors entry of default judgment. *ME2 Prods., Inc. v. Sanchez*, No. 2:17-cv-00667-JCM-NJK, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *3 (D. Nev. Apr. 12, 2018). Serving the defendant by way of written notice within the jurisdiction is procedurally adequate. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Defendant's Marketing Manager was served in the state of Nevada on November 5, 2019, and its answer was due by November 26, 2019. (*See* Summons Returned Executed, ECF No. 6). Plaintiff filed Motion for Entry of Clerk's Default on April 20, 2020, which is more than four months after Defendant's deadline had passed. (Mot. Entry Clerk's Default, ECF No. 7). Plaintiff filed the instant Motion on October 30, 2020, which is more than eleven months after the Defendant's deadline had passed. (Mot. Default J., ECF No. 9).

Defendant's failure to appear or file any response does not appear to be the result of excusable neglect. Therefore, this factor weighs in favor of default judgment.

### F. Public Policy

The seventh and final *Eitel* factor concerns public policy considerations. While public policy generally favors disposition on the merits, the Court concludes that default judgment is appropriate in light of the other *Eitel* factors.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment, (Mot. Default J., ECF No. 9) is **GRANTED.**

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __16__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court